| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| GERVONDA S., | |
|---|---|
| Plaintiff, | CASE NO. 3:18-cv-05130 JRC |
| v. | ORDER ON PLAINTIFF'S COMPLAINT |
| NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, | |
| Defendant. | |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule MJR 13. *See also* Consent Filed by Plaintiff To Proceed Before a Magistrate Judge, Dkt 2. This matter has been fully briefed. *See* Dkt. 20, 21, 22.

ORDER ON PLAINTIFF'S COMPLAINT - 1

In support of her disability claim, plaintiff submitted the opinion of Dr. Wingate, an examining psychologist who diagnosed plaintiff with post-traumatic stress disorder ("PTSD"), major depressive disorder, and antisocial personality traits. Dr. Wingate assessed a number of moderate to marked limitations to plaintiff's work abilities.

After considering and reviewing the record, this Court concludes that the ALJ erred when he rejected Dr. Wingate's opinion because the ALJ mischaracterized Dr. Wingate's mental status examination results as being normal and because the ALJ improperly found that plaintiff's descriptions of stressful life events showed that her symptoms were all attributable to situational stressors, rather than mental health conditions. Because had the ALJ not erroneously rejected Dr. Wingate's opinion, the outcome could have differed, the error was not harmless. However further issues remain and it is not clear, even crediting Dr. Wingate's opinion as true, that plaintiff is disabled, so that a remand for further proceedings is appropriate.

## FACTS

In November 2014, plaintiff applied for disability insurance benefits under 42 U.S.C. § 423 (Title II) and supplemental security income benefits under 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act and alleged disability beginning in December 2010, when plaintiff was 33. *See* AR. 17, 80. Plaintiff's highest level of education was the ninth grade. AR. 51. She was able to work some between 2012 and 2014, as a caregiver and library aide. AR. 278; *see* AR. 19. Plaintiff alleged that depression, PTSD, degenerative disc disease, and anxiety limited her ability to work. *See* AR. 277. The Administration denied her applications initially and following reconsideration. AR. 17.

1    In May 2016, Administrative Law Judge James Sherry ("the ALJ") found that plaintiff's
2 date last insured was in June 2017 and that she was not disabled during the relevant period. *See*
3 AR. 17, 30. At step 2, the ALJ found that plaintiff had at least the severe impairments of facet
4 joint syndrome/lumbago/degenerative disc disease of the lumbar spine, chronic pain syndrome,
5 obesity, major depressive disorder, PTSD/generalized anxiety disorder, anti-social personality
6 traits, and a history of substance abuse. AR. 20.
7    The Appeals Council denied plaintiff's request for review. AR. 1. Plaintiff then filed a
8 complaint for judicial review of the ALJ's decision in this Court. *See* Dkt. 4.

## DISCUSSION

Plaintiff argues that the ALJ erred when he evaluated the medical evidence. Dkt. 20, at 2.

**I. Legal Principles**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**II. Dr. Wingate's Opinion**

In October 2014, Terilee Wingate, Ph.D., examined plaintiff for the Department of Social and Health Services. AR. 627. Dr. Wingate reviewed some of plaintiff's medical records from November 2013 to May 2014, interviewed plaintiff, and conducted a mental status examination. AR. 627, 630.

Dr. Wingate diagnosed plaintiff with chronic PTSD, recurrent and severe major depressive disorder, and antisocial personality traits. AR. 629. She assessed marked ("very significant") limitations to plaintiff's abilities to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, communicate and perform effectively within a work setting, complete a normal work day and week without interruptions from psychologically based symptoms, and maintain appropriate behavior in a work setting. AR. 629–30. Dr. Wingate also assessed moderate ("significant") limitations to plaintiff's abilities to understand, remember, and persist in tasks by following detailed instructions; learn new tasks; adapt to changes in a routine work setting; perform routine tasks without special supervision; make simple work-related decisions; ask simple questions or request assistance; and set realistic goals and plan independently. AR. 629–30.

State agency doctors who reviewed plaintiff's applications contradicted Dr. Wingate's opinion about limitations to plaintiff's abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to ask simple questions or request assistance; to communicate and perform effectively; to complete work without interruption; and to maintain appropriate behavior. *See* AR. 99–100, 127–28. The reviewing doctors opined that plaintiff had no significant limitations in these areas except for her ability to complete a normal work day or week without interruption, which reviewing doctors found to be only moderately limited. *See* AR. 99–100, 127–28. Thus, this Court reviews the ALJ's decision to give little weight to Dr. Wingate's assessment of these limitations to determine whether the ALJ provided specific and legitimate reasons that were supported by substantial evidence in the record. *See Lester v. Chater*, 81 F.3d 830–31 (9th Cir. 1995).

As for the remaining limitations that Dr. Wingate assessed—moderate limitations to plaintiff's abilities to understand, remember, and persist in tasks by following detailed instructions; to learn new tasks; to perform routine tasks without special supervision; to adapt to changes in a routine work setting; to make simple work-related decision; and to set realistic goals and plan independently—none of the other medical opinions that the ALJ considered controverted these limitations that Dr. Wingate assessed. *See* AR. 99–100, 127–28, 420–22. This Court therefore reviews the ALJ's decision to give little weight to Dr. Wingate's remaining limitations to determine whether the ALJ provided clear and convincing reasons that were supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830.

The ALJ gave "[l]ittle weight" to Dr. Wingate's opinion because it was "not entirely consistent with her examination and [plaintiff's] treatment records." AR. 28. The ALJ pointed to Dr. Wingate's mental status examination results that plaintiff had "logical speech, she was cooperative, her memory was intact, and her fund of knowledge was intact" as inconsistent with Dr. Wingate's opinion. AR. 28.

An ALJ may reject a doctor's opinion if it is contradicted by the doctor's recorded observations. *See Bayliss*, 427 F.3d at 1216. An ALJ must not simply offer his own conclusions but "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Here, the ALJ ran afoul of these principles. The ALJ cited to Dr. Wingate's observations that plaintiff's speech was logical, her attitude was cooperative, and her memory and fund of knowledge were intact. *See* AR. 28. But in doing so, the ALJ ignored without explanation multiple abnormalities that Dr. Wingate observed when she conducted the mental status examination—plaintiff's mood was dysphoric, her affective range was blunted, she had slowed

mental processing and errors in concentration testing, and she failed to demonstrate appropriate insight and judgment. *See* AR. 630–31. This was error: an ALJ should not "succumb to the temptation to play doctor" because "[c]ommon sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *see also Gober v. Mathews*, 574 F.2d 772, 777 (3d Cir. 1978) (An ALJ "is not free to set his own expertise against that of a physician who testified before him."). Moreover, the ALJ's treatment of the mental status examination results suggests improper cherry-picking of the record to support his ultimate decision. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). By glossing over the abnormalities that Dr. Wingate observed when she conducted her mental status examination, the ALJ ignored the significance of mental status examinations, which reflect the objective findings of mental health professionals, who are trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports. *See* Paula T. Trzepacz & Robert W. Baker, *The Psychiatric Mental Status Examination* 4 (Oxford University Press 1993).

The ALJ failed to provide either a legitimate or convincing reason to reject Dr. Wingate's opinion when the ALJ found that her mental status examination results did not support her opinion. Defendant argues that other mental status examination results in the record support the ALJ's analysis, but this Court may not supply alternative grounds for an ALJ's decision. *See Bray v. Cmm'r*, 554 F.3d 1219, 1225 (9th Cir. 2009); Dkt. 21, at 5–6.

The other rationale upon which the ALJ relied when he rejected Dr. Wingate's opinion was inconsistency with plaintiff's treatment records, which, according to the ALJ, "contain[ed] evidence of few abnormalities." AR. 28. The ALJ explained that plaintiff "has reported depression from situation[al] stressors, but has not presented with symptoms that support marked

limitations." AR. 28. The ALJ did not cite to any portion of the record in support of this analysis but appears to have relied on his earlier summary of the medical evidence, in which he found that plaintiff "generally reported situational stressors involving her children, family, housing, transportation, and finances." AR. 26.

To be sufficiently specific, an ALJ's decision should link his reasoning to evidence in the record. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (holding that the ALJ erred by failing to give specific reasons for rejecting a treating doctor's opinion, including failing to explain why the ALJ disagreed with the opinion or give reasons for rejecting specific limitations). An ALJ must go beyond merely stating that objective evidence is contrary to a doctor's opinion. *See id.* The ALJ's rationale for rejecting an opinion must be clear enough to facilitate meaningful review and so that this Court is not forced to invent findings for the ALJ. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *Bray*, 554 F.3d at 1225.

Of the ALJ's conclusory determination that plaintiff's treatment records were inconsistent with Dr. Wingate's opinion, only the ALJ's finding that plaintiff's depression resulted from situational stressors is specific enough for meaningful review. *See* AR. 28. The ALJ relied upon treatment notes from plaintiff's 2015 to 2016 therapy sessions, in which she identified various stressful aspects of her life, such as difficulties parenting her son, seeing her ex-husband, dealing with financial issues, reacting to current events, and dealing with memories of prior abuse. *See* AR. 760–71.

But the treatment notes that the ALJ relied upon do not include any evidence of whether isolated and sporadic events caused plaintiff's mental symptoms—which could support that plaintiff was not disabled—or whether plaintiff's mental conditions caused her to be unable to cope with stressful events—which would support Dr. Wingate's conclusion about plaintiff's

depression-based limitations. Because mental health conditions may presumably cause life stressors or difficulty dealing with life stressors, this Court finds that standing alone, the mere fact that plaintiff complained of life stressors is not substantial evidence to discredit Dr. Wingate's opinion that plaintiff suffered disabling mental conditions. Further, the ALJ improperly failed to explain why his interpretation of these events—rather than Dr. Wingate's assessment that plaintiff's mental conditions limited her abilities to deal with others and engage in activities—was correct. *See Reddick*, 157 F.3d at 725; AR. 628. Thus, the ALJ's rationale about plaintiff's "situation[al] stressors" was neither a specific and legitimate nor a clear and convincing reason supported by substantial evidence to reject Dr. Wingate's opinion.

### III. Not Harmless Error and Remand for Further Proceedings

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination[,]' and . . . 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Cmm'r*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

The ALJ failed to give any valid reason for rejecting Dr. Wingate's opinion. Moreover, had the ALJ fully credited Dr. Wingate's testimony, the residual functional capacity ("RFC") could have included greater limitations. For instance, Dr. Wingate opined that plaintiff suffered from marked limitations to her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. *See* AR. 629. The ALJ did not incorporate this limitation in his RFC (*see* AR. 22), and the vocational expert testified that someone who had chronic absences more often than once a month would be unable to maintain employment. *See* AR. 75. Further, although the ALJ incorporated into the

RFC that plaintiff could maintain attention and concentration for "two-hour intervals" as long as she was confined to simple, routine, and repetitive tasks (AR. 22), Dr. Wingate opined that plaintiff had more significant interruptions from psychological symptoms than the reviewing doctors—whom the ALJ had credited—opined. *See* AR. 630. The vocational expert testified that although being off-task less than ten percent of the time would not bar employment, being off-task more than fifteen percent of the time would likely bar employment. AR. 73–75.

However, Dr. Wingate did not translate the limitations that she assessed into specific amounts of time that plaintiff would be off-task or absent from work. Thus, all factual issues are not resolved and it is not clear that, even crediting Dr. Wingate's opinion as true, the ALJ would be required to find plaintiff disabled. Accordingly, a remand for further proceedings, rather than an award of benefits, is appropriate under the credit-as-true rule. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

**IV. Remaining Issues**

Plaintiff also argues that the ALJ erred in evaluating her credibility, another doctor's medical opinion, and assessing the RFC and that this Court must consider additional evidence. Dkt. 20, at 2. Because this Court remands for further proceedings, the ALJ must reassess plaintiff's credibility, the medical opinion evidence, and the RFC, and this Court does not discuss plaintiff's remaining issues. *See* Program Operations Manual System (POMS) GN 03106.036 *Court Remand Orders*, https://secure.ssa.gov/poms.nsf/lnx/0203106036 (last visited January 8, 2019) (a court order vacating a prior decision and remanding the case voids the prior decision and thus returns the case to the status of a pending claim).

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED AND REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for the plaintiff, and the case should be closed.

Dated this 9th day of January, 2019.

J. Richard Creatura
United States Magistrate Judge